Citation Nr: 1126156 
Decision Date: 07/12/11 Archive Date: 07/19/11

DOCKET NO. 03-30 298 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina 


THE ISSUE

Entitlement to service connection for a psychiatric disorder, to include schizophrenia and posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Carolyn J. Kerr, Accredited Claims Agent


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

S. Mishalanie, Counsel

INTRODUCTION

The Veteran served on active duty from November 1969 to May 1972. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2003 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina, in which the RO denied the Veteran's request to reopen a claim for service connection for schizophrenia. 

In September 2005, the Veteran testified during a Board hearing before the undersigned Veterans Law Judge at the RO; a transcript of that hearing is of record.

In a February 2006 decision, the Board, in pertinent part, reopened the claim for service connection for schizophrenia and remanded the claim, on the merits, to the RO, via the Appeals Management Center (AMC) in Washington, DC, for additional development. In February 2007, the Board also remanded the claim to the RO/AMC for additional development.

In October 2009, the Board referred the matter for an Independent Medical Evaluation (IME) for an advisory opinion concerning the etiology of the Veteran's psychiatric disorder. The advisory opinion was obtained in December 2009. 

In a June 2010 decision, the Board denied the Veteran's claim for service connection for schizophrenia. The Veteran, in turn, appealed to the United States Court of Appeals for Veterans Claims (the Court). In September 2010, counsel for VA's Secretary and the Veteran's former attorney (the parties) filed a Joint Motion for Remand with the Court. By Order dated later that month, the Court granted the motion, vacating the Board's decision and remanding the matter to the Board for further proceedings consistent with the Joint Motion.

In characterizing the issue on appeal, the Board recognizes that when a claimant makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled. Clemons v. Shinseki, 23 Vet. App. 1 (2009). In light of this holding, and the fact that the Veteran has been diagnosed with schizophrenia and PTSD, the issue on appeal has been recharacterized, as reflected on the title page. 

The record reflects that the Veteran was previously represented by Judy J. Donegan, a private attorney, who submitted argument on behalf of the Veteran dated June 8, 2011. Later that month, the Veteran filed a VA Form 21-22a (Appointment of Individual as Claimant's Representative) appointing Carolyn J. Kerr, an accredited claims agent, as his representative. The Board recognizes the change in representation. See 38 C.F.R. § 14.631(f) (2010).


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate the claim on appeal have been accomplished.

2. The evidence indicating that Veteran's schizophrenia had its onset in service, within one year of service, or is otherwise related to service, is, at the very least, evenly balanced.

3. The Veteran has alleged in-service stressors related to fear of hostile military activity that is consistent with the circumstances of his service, and the record includes competent opinion confirming that this stressor is sufficient to support a diagnosis of PTSD, and that there exists a link between this stressor and the Veteran's symptoms.


CONCLUSION OF LAW

Resolving all reasonable doubt in the Veteran's favor, the criteria for service connection for schizophrenia and PTSD are met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107(b) (West 2002 & Supp. 2009); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 4.125(a) (2010).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA have been codified, as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a).

Given the favorable disposition of the claim for service connection on appeal, the Board finds that all notification and development action needed to fairly adjudicate this claim has been accomplished. 

II. Factual Background

The Veteran's service treatment records are unremarkable for any complaints, findings, or diagnoses related to a psychiatric disorder. His October 1969 pre-induction and April 1972 separation examination reports reflect that his psychiatric evaluations were normal. 

Post-service, a May 1976 private treatment record from the Beckman Center reflects the Veteran's complaints of headaches and nervousness, and that his right eye jumped. He said that these symptoms began in February 1975. That same day in May 1976, a private treatment record from Dr. Rice at the Newberry Mental Health Center reflects that the Veteran was referred with complaints of headaches and nervousness. The Veteran said he had had been having these symptoms for several months and they were getting progressively worse. He said that he first recalled being nervous after he got married. The impression was psychophysiological headaches. The Veteran was also seen in June, July and October 1976 with similar symptoms. 

In September 1977, the Veteran was admitted to a VA Hospital because of bizarre behavior, paranoia, and delusional ideas. He was diagnosed with paranoid schizophrenia. VA and private treatment records since September 1977 reflect the Veteran's ongoing treatment for schizophrenia, including several periods of inpatient hospitalization. 

The report of an August 2005 VA examination for mental disorders reflects that the Veteran reported the following traumatic events during service: witnessing a friend overdose and die; and seeing dead bodies on the side of the road while on a convoy to Danang. The examiner (Dr. P.M.) diagnosed the Veteran with PTSD and paranoid schizophrenia. The examiner opined that "...it does appear that the veteran's symptoms are a result of his military experience at least in part. Certainly the post-traumatic stress disorder is a direct result and ... the military appears to be a major factor in terms of development of his schizophrenia ..."

In a February 2006 letter, a private psychologist (Dr. L. J.-M.) stated that the Veteran's documents seem to support a diagnosis of schizophrenia during the allotted time frame [for service connection] and that it was clear that he met the criteria for a current diagnosis of schizophrenia. The psychologist indicated that she had not evaluated the Veteran for PTSD.

The report of a June 2007 VA examination for mental disorders conducted by Dr. M.W., a VA psychologist, reflects that the Veteran identified an additional stressor that occurred during service. He said that he witnessed two soldiers die during a convoy, one named J.R. and the other was called "Birdsong." The Veteran described symptoms consistent with both schizophrenia and PTSD. The examiner deferred providing a diagnosis and medical opinion until psychological testing was completed. And addendum to that report indicates that the examiner diagnosed schizophrenia and PTSD based on physiological testing. The examiner noted that, according to the Veteran's history, his psychotic disorder began during active duty and was exacerbated while he was in the National Guard. An October 2007 note indicates that the examiner noted that the Veteran's first episode of schizophrenia occurred in October 1976 while the Veteran was in the Reserves. The examiner indicated that it was "at least as likely as not" that the schizophrenia and PTSD originated during military service and continued while he was in the National Guard. An addendum to that note indicates that the examiner (Dr. M.W.) had wanted to review the claims file before issuing her October 2007 report, but that it was not provided. Another VA physician, Dr. M.D., noted that because the claims file was not provided, Dr. M.W.'s report should be considered inconclusive. 

The report of a June 2007 VA examination conducted by another VA psychologist, Dr. J.T., reflects the Veteran's self-reported history of racing thoughts and difficulty paying attention since 1971. He also reported the above-noted traumatic stressors during service. The examiner indicated that psychological testing was reflective of mild PTSD and schizophrenia. The examiner noted that symptoms related to schizophrenia were more substantial than those related to PTSD. The examiner noted that by the Veteran's history, the psychotic disorder began while serving in the military and went through a period of exacerbation while in was in the National Guard.

In March 2008, Dr. M.W. extensively reviewed the Veteran's claims file and issued a report of her findings. She opined that it was "less likely than not that the veteran's schizophrenia had its onset during active duty or the two years following discharge from active duty." The bases for her opinion was that the medical records did not list a diagnosis of schizophrenia prior to 1976 and there was no documentation of symptoms that were likely caused by schizophrenia prior to November 1975. She said that to stat that there were indications of schizophrenia prior to this date would be "resorting to mere speculation."

In a May 2008 letter, the Veteran's private psychologist (Dr. L. J.-M.) provided information from the DSM-IV noting that prodromal symptoms are often present prior to the active phase of schizophrenia and that it can be difficult to evaluate early stages of schizophrenia until a full psychotic break occurs. It was also noted that the median age at onset for the first psychotic episode of schizophrenia is usually in the early to mid-20s for men. She also provided information from the Comprehensive Textbook of Psychiatry/V - Volume I, Fifth Edition, which reflects that there may be a precipitating event prior to onset, including "serving in a war-zone with the military." Dr. L. J.-M. opined that the Veteran's service in Vietnam was likely a precipitating event that resulted in psychiatric distress and ultimately facilitated the initial full psychotic break. She stated that it was quite reasonable to speculate that the Veteran's schizophrenia was "as likely as not, or even more likely than not, the result of his experiences in the military."

Given the conflicting medical opinions, the Board requested an IME. The report of the December 2009 IME from Dr. L.M. reflects the physician's ultimate medical opinion that it was not as likely as not that the Veteran developed schizophrenia within one year of his discharge from active duty or "otherwise related to the Veteran's active service..." The physician noted that the Veteran's symptoms were documented as early as May 1976 and that the Veteran had noted being nervous since marriage and that his present symptoms dated back until February 1975. The physician noted that schizophrenia is usually dated to a patient's "first break", which, in this case, occurred in 1977 with his admission to a VA hospital. The physician also noted that most patients go through a "prodrome", a period of diminished functioning noted usually by family and friends. In this case, the physician stated that the onset of the Veteran's symptoms dated back to May 1976 when he was treated for psychophysiologic headache with a history dating back to 1975. The physician indicated that this (1975) would probably be the most accurate subjective figure for the onset of initial symptoms as the initial presentation of mental illness was not in the context of a disability application. The physician later discussed the relationship between the Veteran's psychiatric disorder and Vietnam and opined that "it is likely that the stress of [the Veteran's] wartime experience as well as any other trauma or situations that involved chronic stress would have contributed to his risk for developing schizophrenia. The genesis of schizophrenia however is multifactorial with genetics playing significant role, as does child experiences, exposure to substances, and prenatal exposure to infections and stress. Considering the multitude of risk factors, although the stress of [the Veteran's] military service in Vietnam would have been a contributing stressor, it would not be the predominate cause of the development of schizophrenia, such that it rises to the level of being the etiological agent of the onset of his illness."


III. Law and Regulations

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). 

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303. 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Savage v. Gober, 10 Vet. App. 488, 494-97 (1997); see also Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage, 10 Vet. App. at 495-96; see Hickson, 12 Vet. App. at 253 (lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303(b).

In relevant part, 38 U.S.C. § 1154(a) requires that the VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim to disability or death benefits. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed.Cir. 2007). In fact, competent medical evidence is not necessarily required when the determinative issue involves either medical etiology or a medical diagnosis. Id. at 1376-77; see also Buchanan v. Nicholson, 451 F .3d 1331, 1337 (Fed.Cir.2006); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. Sept 14, 2009). 

"Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Savage, 10 Vet. App. at 496 (citing Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991). Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted").

If psychoses becomes manifest to a degree of 10 percent within one year of separation from active service, then it is presumed to have been incurred during active service, even though there is no evidence of psychoses during service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

Service connection for PTSD requires medical evidence establishing a diagnosis of the condition in accordance with 38 C.F.R. § 4.125(a) (2010); a link, established by medical evidence, between current symptomatology and an in-service stressor; and credible supporting evidence that the claimed in-service stressor actually occurred. If the evidence establishes that the Veteran engaged in combat with the enemy and the claimed stressor is related to that combat, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the Veteran's service, the Veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. 38 C.F.R. § 3.304(f) (2010).

Pursuant to the amended rules of new 38 CFR § 3.304(f)(3)(2010), service connection for PTSD may also be granted if the evidence demonstrates a current diagnosis of PTSD (rendered by an examiner specified by the regulation); an in-service stressor consistent with the places, types, and circumstances of service 
(satisfactorily established by lay testimony) has been medically related to the Veteran's fear of hostile military or terrorist activity by a VA psychiatrist or psychologist, or one contracted with by VA; and the Veteran's PTSD symptoms have been medically related to the in-service stressor by a VA psychiatrist or psychologist, or one contracted with by VA. 

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and VA regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid. 38 C.F.R. § 3.303(d). 

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b). 

IV. Analysis

Considering the evidence in light of the foregoing, and resolving reasonable doubt in the Veteran's favor, the Board finds that service connection for schizophrenia and PTSD is warranted. 

It is the Board's responsibility to weigh the evidence (both favorable and unfavorable) and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. Schoolman v. West, 12 Vet. App. 307, 310-311 (1999); Evans v. West, 12 Vet. App. 22, 30 (1998), citing Owens v. Brown, 7 Vet. App. 429, 433 (1995). Obviously, this responsibility is more difficult when, as here, medical opinions diverge. And at the same time, the Board is mindful that it cannot make its own independent medical determination and there must be plausible reasons for favoring one medical opinion over another. Evans at 31; see also Rucker v. Brown, 10 Vet. App. 67, 74 (1997), citing Colvin v. Derwinski, 1 Vet. App. 171 (1991). Here, as explained below, the Board finds that the competent medical evidence is in relative equipoise. 

As regards the Veteran's schizophrenia, the medical opinions are in agreement that the first documented evidence of a psychotic break was in September 1977 when the Veteran hospitalized at a VA facility. The medical opinions also agree that there is often prodrome, an early set of symptoms predating the first psychotic break of schizophrenia. The Veteran's first documented evidence of treatment for psychiatric problems was in May 1976. Although the Veteran was not diagnosed with schizophrenia at that time, he was treated for nervousness and psychophysiological headaches, which both Dr. L. J.-M. and Dr. L.M. agree were likely prodrome symptoms. However, the likely onset of the Veteran's prodrome symptoms and the relationship between the development of schizophrenia and the Veteran's wartime experiences is unclear and the medical opinions on these matters diverge. 
 
On one hand, Dr. L. J.-M. opined that it is at least as likely as not that the Veteran's prodrome symptoms had their onset in service. This is supported by lay statements from the Veteran and by medical treatise information indicating that schizophrenia in its early stages is difficult to diagnose. The Board also points out that only four years ensued between the Veteran's separation from service and the first documented complaints of psychiatric problems. Furthermore, at his initial consultation with Dr. R. in May 1976, the Veteran said that his history of nervousness dated back to his marriage. The Veteran was married in July 1971, during active service. This supports his later contentions that he began having problems during service in 1971. 

On the other hand, Dr. L.M. opined that the onset of schizophrenia was not at least as likely as not during service or within one year of service. This opinion is supported by the fact that, in May 1976, the Veteran reported that his symptoms began in February 1975 and that there is no documented evidence of any complaints of psychiatric problems prior to this date. Notwithstanding this opinion, however, Dr. L.M. opined that the Veteran's wartime experiences, as well as other factors, contributed to the development of schizophrenia, but that the Veteran's service was not the predominate cause and he did not consider it to rise to the level of stating that the Veteran's schizophrenia was more likely than not related to his wartime experiences. 

The Board also notes that Dr. M.W., a VA psychologist, also provided a negative opinion after an extensive review of the Veteran's claims file in March 2008. However, given Dr. M.W.'s prior positive opinions, which were also noted to be based on a review of the claims file, the Board finds that her later negative opinion is less persuasive. Likewise, Dr. J.T.'s June 2007 opinion that the onset of schizophrenia occurred during service is not particularly persuasive as it appears to be a reiteration of Dr. M.W.'s opinion.

The Board finds that the medical opinions of Dr. L. J.-M. and Dr. L.M. are both competent and persuasive. Both doctors provided a rationale and medical treatise references. The Board notes that Dr. L. J.-M. is the Veteran's treating psychologist and therefore has had the opportunity to meet with the Veteran and evaluate him in person whereas Dr. L.M. has not. Furthermore, Dr. L.M. indicated that the Veteran's service was likely a contributing factor in the Veteran's development of schizophrenia, even if it was not necessary the predominate factor. Overall, the Board finds that the evidence for and against the claim for service connection for schizophrenia is, at the very least, in relative equipoise. 

The Board also notes that the Veteran has also been diagnosed with PTSD directly related to stressors that occurred during his military service. As noted above, the Veteran reported seeing a friend overdose, witnessing two soldiers being killed, and seeing dead bodies during a convoy. The Veteran's DD-214 reflects that he served in the Republic of Vietnam from August 1970 to August 1971. His military occupation specialty (MOS) was Cargo Handler (57H20) and his last duty assignment and major command was with the 26th Transportation Company. He received the National Defense Service Medal, Vietnam Service Medal, Republic of Vietnam Campaign Medal with 60 device, Bronze Star Medal, Good Conduct Medal, and Marksman Badge (M-16 rifle). 

In this case, the Veteran's claimed military stressors involving witnessing the death of two soldiers and seeing dead bodies along a convoy are clearly related to his fear of hostile military activity and are consistent with the places, types, and circumstances of the Veteran's service. Under these circumstances, the Board finds that the Veteran's lay assertions may be accepted as sufficient evidence of each stressor's occurrence. As the August 2005 VA examiner, a VA psychologist, diagnosed the Veteran with PTSD related to his military stressors, the Board finds that the criteria for service connection for PTSD, pursuant to 38 C.F.R. § 3.304(f), are also met.

Given the facts noted above, and resolving all reasonable doubt in the Veteran's favor, the Board finds that the criteria for service connection for schizophrenia and PTSD are met. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

Service connection for schizophrenia and PTSD is granted.


____________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs